OPINION
On January 29, 1992, appellant, Gerald Bell, and appellee, Donna Bell, were married. One child was born as issue of said marriage, Zachary Bell, born July 11, 1992. Relevant to this appeal, at the time the parties were married, appellant owned a residence on Rosedale Road in Reynoldsburg, Ohio from 1978, an IRA and part ownership of Bell Tire, Inc.
In September of 1996, the parties purchased a home located on Royalton Road in Lancaster, Ohio. The property was financed with a cash down payment of $9,793.26 which was a gift from appellant's mother and a mortgage loan from State Savings Bank in the amount of $129,000. The Rosedale Road property was sold.
In early 1999, appellant rolled his IRA over from a Merrill-Lynch account to Marlan Financial Services to purchase alpacas. Appellant purchased eight alpacas in all.
In March of 1999, the parties refinanced the Royalton Road property. Appellant mortgaged an additional $30,000, giving appellee $20,000 to pay off debt.
On July 8, 1999, appellee filed a complaint for divorce. A hearing was held on February 27, 2001 on the limited issues of the parties' interest in the marital residence and the IRA/alpaca herd, and the parties' debt. On March 7, 2001, the trial court issued findings of fact and conclusions of law. The trial court ordered appellant to pay appellee $31,104.44 which represented her interest in the marital residence and the IRA, and reimbursement for uninsured medical expenses related to Zachary. A final judgment entry decree of divorce was filed on March 27, 2001.
Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I THE TRIAL COURT ERRED IN DETERMINING THAT ONLY $54,700 OF THE EQUITY IN THE MARITAL RESIDENCE WAS APPELLANT'S SEPARATE PROPERTY.
 II THE TRIAL COURT ERRED IN DETERMINING APPELLEE'S INTEREST IN THE IRA ALPACA ANIMALS SINCE MOST OF THE INVESTMENT REPRESENTED APPELLANT'S PREMARITAL IRA, PASSIVE INTEREST THEREON, AND PROCEEDS FROM HIS FATHER'S LIFE INSURANCE POLICY.
 III THE TRIAL COURT ERRED IN NOT CONSIDERING APPELLANT'S MARITAL INDEBTEDNESS IN THE DIVISION OF ASSETS.
 IV THE TRIAL COURT ERRED IN DETERMINING THAT THE $20,000 GIVEN BY APPELLANT TO APPELLEE WAS EXPENDED FOR MARITAL OBLIGATIONS.
 V THE TRIAL COURT ERRED IN ORDERING APPELLANT TO REIMBURSE APPELLEE FOR ONE-HALF OF TOTAL MEDICAL EXPENSES FOR THE MINOR CHILD.
 I, II, III, IV
These assignments of error challenge the trial court's determination on appellant's separate property involving the marital residence and the IRA, the marital debts and the $20,000 given by appellant to appellee. These issues all center around the value of appellant's separate property interest in the Rosedale Road property and the use of the funds received from the sale of said property.
R.C. 3105.171(B) authorizes the trial court to determine "what constitutes marital property and what constitutes separate property." Subsection (A)(3)(a) defines "marital property" as follows:
 (i) All real and personal property that currently is owned by either or both of the spouses, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;
 (ii) All interest that either or both of the spouses currently has in any real or personal property, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;
 (iii) Except as otherwise provided in this section, all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage;
 (iv) A participant account, as defined in section 148.01
of the Revised Code, * * *.
"Separate property" as defined in subsection (A)(6)(a) "means all real and personal property and any interest in real or personal property that is * * * acquired by one spouse prior to the date of the marriage," "[p]assive income and appreciation acquired from separate property by one spouse during the marriage" and "[a]ny gift of any real or personal property or of an interest in real or personal property that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse." "Passive income" is defined in subsection (A)(4) as "income acquired other than as a result of the labor, monetary, or in-kind contribution of either spouse."
The trial court is provided with broad discretion in deciding what is equitable upon the facts and circumstances of each case. Cherry v.Cherry (1981), 66 Ohio St.2d 348. We cannot substitute our judgment for that of the trial court unless, when considering the totality of the circumstances, the trial court abused its discretion. Holcomb v. Holcomb
(1989), 44 Ohio St.3d 128. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217.
 MARITAL PROPERTY
It is appellant's position that $87,000 of equity from the sale of the Rosedale Road property went toward the purchase of the Royalton Road property:
 The total purchase price of $139,593 was paid by a $9,793.26 cash down payment from appellant's separate property — a gift from his mother —, real estate tax credit of $800.24 and a new loan from State Savings in the amount of $129,000. This new loan included a bridge loan in the amount of $86,742.77 from State Savings Bank on Appellant's equity in his Rosedale Road residence. (Tr. P. 128, Appellant's Exhibits B C) When the Rosedale Road real estate was sold on November 16, 1996, the first mortgage balance of $24,700.09 was paid off along with the bridge loan balance of $86,742.77. The payoff of the bridge loan resulted in a new mortgage on the Royalton Road real estate in the amount of $44,655.80. Accordingly, appellant should have been credited with separate equity in the Royalton Road real estate in the amount of $96,536.03.
Appellant's Brief at 12-13.[1]
It is appellee's position that the $10,000 down payment for the Royalton Road property was a joint gift to both parties from appellant's mother and that $45,000 of the Rosedale Road property sale was used toward the purchase of the Royalton Road property.[2] T. at 67-68, 129; Appellee's Brief at 8.
In 1999, the parties refinanced the Royalton Road property. T. at 56. Appellant mortgaged an additional $30,000. T. at 56, 154-155. Appellee claims $20,000 from that refinancing paid off marital debts. T. at 56-57. Appellant claims the $20,000 paid off a non-marital debt i.e.,
appellee's son's car loan in the amount of $2,904.77. T. at 78-79, 82; Appellant's Brief at 17
The Rosedale Road property was purchased by appellant in 1978, some thirteen years prior to the marriage. T. at 45-46. Appellant testified he put $45,000 of the Rosedale Road property sale into the Royalton Road property purchase, not the $87,000 he now argues. T. at 129. The trial court acknowledged this in its March 7, 2001 findings of fact and conclusions of law wherein it found $54,700 of the marital residence to be appellant's separate property: $45,000 from the Rosedale Road property sale and $9,700 from appellant's mother. We fail to find the trial court erred given the clear testimony of appellant that $45,000 of the sale proceeds from the Rosedale Road property was used for the Royalton Road property purchase.
When the Royalton Road property was refinanced, $30,000 in cash was received. Plaintiff's Exhibit 2 is an itemization of the payment of credit card debts and other bills totaling $20,167.09. During his testimony, appellant challenged that the items were all marital debts, but now only contests $2,904.77 at the very least (the car loan) or $10,904.77 at the very most (plus $8,000 for appellee's premarital debt). T. at 137; Appellant's Brief at 17-18. The $20,000 was deposited on January 27, 1999 prior to the break up of the marriage. The checks written from the account run from January 31, 1999 to March 18, 1999. Various credit card bills and health bills were paid. The parties had been married since early 1992, so it was correct to assume the bills were marital debt. T. at 153.
The notation on Plaintiff's Exhibit 2 regarding "[p]ayoff Dan's loan for car sold to him by Jerry — then left this amt. on Citibank Master for Dan to pay on" is in dispute. Appellant was unable to account for the extra $10,000 from the refinancing. T. at 155. Given the fact that appellant somehow used $10,000 from the refinancing of the marital residence and was unable to account for it, the trial court could have chosen to overlook the missing $10,000 in exchange for the $2,904.77 car loan to appellee's son. Further, during appellant's testimony, he never challenged the car loan payment.
Given the evidence, we cannot find the trial court abused its discretion in so finding on the issues of separate property and marital debt.
 IRA/ALPACAS
Appellant argues that all but a few thousand dollars of his IRA/alpaca herd should be his separate property. Appellant's Brief at 14.
The trial court accepted appellee's value of appellant's IRA at the time of the marriage as $42,000. T. at 55. Appellant disputed this amount, but did not present any evidence to contradict said value. T. at 40, 120. Appellant converted his IRA to an alpaca herd in early 1999. T. at 132-133. In fact, the first purchase was made with monies from a college account for Zachary. T. at 133. The appraised value of the alpaca herd, consisting of seven alpacas, was $72,000. T. at 20. When one alpaca died, an insurance policy paid $15,000 for the loss. T. at 42, 109. Also, there was an outstanding feed, care and vet bill for $15,000. T. at 106-108. In its findings of fact and conclusions of law, the trial court valued the alpaca herd at a net value of $71,900. The trial court held the "increase in value ($71,900 — $42,000) from the date of marriage is $29,900 all of which is a marital asset." See, Conclusion of Law A.
Appellant argues the trial court's premarital valuation of the IRA is low. As stated supra, the only testimony on the value of the IRA at the time of the marriage was appellee's recollection of $42,000. T. at 55. Clearly over the years the IRA would have appreciated, and it was not rolled over to purchase the alpacas until 1999. The IRA was established by appellant during the ownership of Bell Tire with contributions made during the marriage. T. at 43. We cannot find the trial court erred in allowing appellee to benefit from the appreciated value and contributions during the marriage. Further, although appellant claims the increased value to be passive income, he failed to establish such during the trial.
Assignments of Error I, II, III, and IV are denied.
 V
Appellant claims the trial court erred in ordering him to pay half of Zachary's medical expenses. We disagree.
Appellant argues R.C. 3113.215(B)(5)(f) provides "[t]he court shall not order an amount of child support for reasonable and ordinary uninsured medical or dental expenses in addition to the amount of the child support obligation determined in accordance with the schedule."
Prior to any testimony being taken, appellee's counsel informed the trial court that the "uncovered expenses will be divided 50/50, I assume. That will be for all uncovered medical expenses." T. at 7. Appellant's counsel affirmed "[t]hat is basically the agreement." T. at 8. Appellee produced two exhibits containing receipts for medications and medical providers for Zachary. See, Plaintiff's Exhibits 3 and 4. The dates on Plaintiff's Exhibit 3 run from September 1, 1999 to February 19, 2001 and the dates on Plaintiff's Exhibit 4 run from September 1, 1998 to February 19, 2000. The divorce was filed by appellee on July 8, 1999 and the final hearing was held on February 27, 2001. Clearly the bills accrued during the pendency of the divorce and are unrelated to the final child support award.
The exhibits established appellee paid $1,008.87. The trial court simply divided that amount in ordering appellant to pay appellee $504.44. Appellant agreed to the 50/50 split of the uncovered medical bills at the commencement of the February 27, 2001 hearing. T. at 7-8. Upon review, we find the trial court did not err in ordering appellant to pay half of the uncovered medical bills.
Assignment of Error V is denied.
JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Fairfield County, Ohio, Domestic Relations Division is affirmed.
Hon. Julie A. Edwards, P.J. Hon. Sheila G. Farmer, J. Hon. John F. Boggins, J. concur.
[1] During his testimony, appellant claimed the $9,000 down payment "came from buy-out money from Bell Tire." T. at 123.
[2] Appellant does not dispute the gift from his mother, but claims not to have a clear recollection of the circumstances surrounding the making of the gift. T. at 123.